The Court,

Wootten, J.,

charged the jury: This case, which has been protracted to considerable length by a thorough investigation of the facts, and an elaborate argument of the law on both sides, has now been brought to that stage of it when it becomes necessary for the Court to announce to you their opinion of the law, as applicable to it, and which must mainly govern the decision of it, as there appears to be but little controversy in regard to 'the facts which pertain to it.
It is, as you are already aware, an action i commonly called an action of assumpsit, brought by the Delaware Bailroad Company against Beniah Tharp to recover from him $120, the amount of a call made on him of three dollars per share on his subscription of forty shares of the *171 capital stock of the company, with interest at the rate of two per cent, per month from thirty days after such call, which was on thé 1st of December, 1852.
To entitle the plaintiffs to recover it is necessary that they should prove first, the legal existence, of the company as a corporation; and this is done by showing that the Legislature passed the charter, and by showing that the company has been organized according to the terms and stipulations of the charter.
Secondly; that Beniah Tharp, the defendant, subscribed to the capital stock of this company to the amount of forty shares, at $25 per share.
Thirdly, that 5000 shares of stock were subscribed; that the call was made for the amount claimed and notice thereof given as authorized and required by the charter, that is, by publication in two newspapers published in the city of Wilmington, at least thirty days previous to the first day of December, 1852, the time appointed for the payment of that portion or instalment of the stock called for, and that the defendant neglected to pay the same at the time and place appointed for that purpose.
If these facts are all proved to your satisfaction the plaintiffs are entitled to your verdict for the amount claimed by them, unless the defendant has set up and established sdme legal defence which absolves him from his liability.
The defence set up and relied upon by the defendant is, that since the subscription by him to this stock, and since the organization of the company as originally chartered, a change has been made in the charter and in the line and eastern terminus of the road without Ms assent, which, he alleges, releases and absolves him from his liability to pay the amount subscribed by him. That a change has been made by the Legislature, on the application of the company, and has been approved and adopted by the stockholders is true; but whether that change is of such a character as discharges the defendant from his liability to pay the amount of his subscription to the stock is the question upon which this case turns, and which we are now *172 called upon to answer, by the announcement of our opinion to you of the law upon that subject.
We must confess that we have been considerably embarrassed by the contrariety of opinions and seeming conflict of decisions cited, and we are not now entirely free from doubts; but we have given the subject all the attention and the "fullest consideration which our limited time and opportunity would allow, and will announce the conclusion to which it has conducted us.
Upon examining the authorities cited on behalf of the defendant, in support of his position, most of them strike us as having and bearing but little analogy to the case now under consideration.
The case of The Hartford and New Haven Railroad Company v. Crosswell, 5 Hill, does go to the extent that such extensive and radical changes may be made in the road, or work of improvement, as will operate as a dissolution of the contract of a subscriber to stock; but it also recognizes the principle that such alterations may be made, in the language of the learned judge who delivered the opinion of the Court, as are clearly enough beneficial, or at least not prejudicial to the interest of the party.
So, too, in the case cited from 13 Illinois R., it is conceded that such changes or amendments may be made to the charter as may be considered by the Legislature useful to the public, and by the company beneficial to them, if they do not divert its property to new and different purposes, and where the work is still designed to accommodate the same line of travel and transportation, and to promote the same general good, without absolving the subseribers from their engagements.
The case in 1 New Hampshire Reports, and those in 8 and 10 Massachusetts Reports, are also relied upon; but those cases are essentially different from the .one we are now considering; and although it is somewhat difficult to determine what they really do decide, they were doubtless cases where the liability'of the subscribers was increased. The case in Hew Hampshire was-a subscription for one share *173 of stock, and the contract was to pay all assessments a majority of the company might think necessary to raise for improving the navigation of a river within certain limits, and for the purchase of six acres of land for the prosecution of the improvement. The assessment on that share was for the purchase of one hundred acres of land, whereby the liability of the subscriber was increased.
And so in the cases cited from 8 and 10 Massachusetts Reports, the undertaking was in the one case to pay assessments on one share-of stock, to make a turnpike, the cost of which was estimated at $40,000, and that there should be 400 shares, being $100 per share. Two assessments were made, to the amount of $240. A change was made in the charter by the Legislature, on the application of the company, and the direction of the road was altered. The defendant supposed, and very naturally thought, he could not in any possible event be held liable for assessments amounting to more than $100 on each share, for that was the stipulated contract between him and the company when he subscribed, and he was therefore absolved from his liability by such a change as necessarily increased his liability from $200 to $240.
The facts and rulings are the same, or very similar, in the case in 10 Massachusetts.
On the part of the plaintiffs several authorities have been cited in support qf the principle contended for by them; that is to say, that a change made in the charter by the Legislature, without impairing the contract between the subscribers and the company, does not release subscribers to the stock.
The first of these is the case cited from 2 Russell & Mill., Ware v. The Grand Junction Water-works Company. Ware, the defendant, objected first to the expenditure of the money of the corporation for the procurement of an amendment to the charter; and also to the application to Parliament for such amendment.
Lord Brougham held that one of the incidents of a corporation is to apply to Parliament for an amendment of *174 its charter. And the members of the corporation entered into it with that contingency; and if they intended to enter into it with any reservation, they ought so to have stipulated.
The next of these cases is that cited from 2 Watts & Sergeant. In that case the Court held that the extension or enlargement of the powers or privileges of a corporation, though it may increase the expenses or moneys, does not change the contract of the corporator. His contract was simply to pay to the company his subscription; and to become, in consideration thereof, a holder of stock to that amount; that, as a corporator, he entered into the contract subject to the right of the company to apply to the Legislature to change the charter for the public good, which is the object of all corporations.
The plaintiffs also cited the case of The Middle and Great Western Railroad Company v. Gordon, in 16 Meeson & Welsby; The Troy and Rutland Railroad Company v. Kerr, 17 Barbour’s Reports; and the case in 6 Watts & Sergeant.
The grant of acts of incorporation by the State is professedly for the public good generally; and there is an inherent right in the Legislature to amend, change, or alter the charter of any incorporated company with its consent. Those who become corporators do so with that contingency, and their engagements are therefore subject to it. If a subscriber to stock enters into the corporation generally without specific stipulations, he is hound and concluded by the action of a majority of the corporation; and if the Legislature change or amend the charter on the application of the company, and with its assent and approval, without thereby impairing the contract of the corporators, in the mode we have stated, they will not be thereby discharged from their liability as subscribers to stock. Such a change as would not increase the liability of the party to pay more money than he subscribed originally to pay, but merely affects his individual or personal interest, as that the road did not pass by his door, or through his farm, as he may have desired or expected, is not such *175 a change as will absolve the party from his obligation to pay his subscription. The object of corporations being for the public good, and not private interest or advantage.
N. P. Smithers and J. A. Bayard, for plaintiffs.
W. Saulsbury and C. S. Layton, for defendant.
The contract of the defendant with the Delaware Railroad Company was to pay for forty shares of the capital stock of the Company at $25 per share, in consideration of being the holder of that number of shares. That he agreed and promised to pay the same to the president and directors of the company, in such manner and proportions and at such times as shall be determined and' called for by them. By the terms of his contract he is bound. If he intended to subscribe on the condition that the road should not be changed in its eastern terminus or otherwise, he ought so to have stipulated; not having done so, he cannot now shield himself under the defence set up by him, and upon the ground that the road has since been changed from its terminus at Dona River. Having subscribed' under the general terms of the charter, with an inherent right in the Legislature to change it for the public good, with the consent of the corporation, and the company having applied for and accepted the amendment, he, as a corporator, is concluded by the action of the majority of the company, although he may not as an individual corporator have assented to it.
Verdict for plaintiffs.